## IN THE UNITED STATES BANKRUPCY COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE: | * | |
| **GERALD YEBOAH OMARI** | * | **CASE NO.   14-19725** |
| | * | |
| DEBTOR | * | **CHAPTER 11** |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## DEBTOR'S CORRECTED AMENDED PLAN OF REORGANIZATION
## (December 22, 2016)

**GERALD YEBOAH OMARI** (the "Debtor"), debtor and debtor in possession herein, by undersigned counsel, John D. Burns, Esquire, and The Burns LawFirm, LLC, hereby proposes and presents this Corrected Plan of Reorganization (the "Plan"), as amended, pursuant to the provisions of Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq, and, upon entry of an Order of Confirmation, agrees to be bound hereby:

## ARTICLE I
## DEFINITIONS:

For purposes of this Plan, unless the context otherwise requires, the following terms shall have the respective meanings hereinafter set forth:

1.1.    "Administrative Expense Claim" shall mean any Claim arising or accruing on or after the Petition Date which is entitled to Priority Status pursuant to §§ 503(b) and 507(a)(2) of the Bankruptcy Code.  Administrative Expense Claim includes Claims of persons, such as attomeys, accountants and other professionals, retained and entitled to compensation and reimbursement in the Chapter 11 Case pursuant to §§ 327, 328, 330, 331 and 503(b) of the Bankruptcy Code,  in addition to fees incurred to the United States Trustee pursuant to 28 U.S.C. § 1930.  In accordance with 11 U.S.C. § 503(b)(1)(D), the United States is not required to file a Administrative Expense Claim to assert its rights in accordance with that provision.  However,

1

the IRS shall comply with the Internal Revenue Manual [IRM 5.9.8.11(8)] and file an Administrative Expense Claim in accordance with its own mandated procedures.

1.2. "Allowed Amount" or "Allowed Claim" shall mean (a) the amount of a Claim for which a proof of Claim has been filed, or amended if necessary, with the Bankruptcy Court by the Bar Date, to which no objection has been interposed, and which is not a Disputed Claim under the Plan, (b) if no proof of Claim is timely filed, the amount of any Claim listed in the Schedules, including any timely amendments thereto, which is not listed as disputed, contingent or unliquidated as to amount, unless such is a Disputed Claim under the Plan, and (c) if an objection to the allowance of any Claim has been filed, or if such Claim was designated a Disputed Claim under the Plan, the amount of such Claim allowed by Final Order of the Bankruptcy Court or by agreement of the Debtor.

1.3. "Allowed Secured Claim" shall mean that portion of an Allowed Claim which is secured by a properly perfected, non-avoidable lien or security interest in property of the estate to the extent of the value of that property relative to the priority of the lien or security interest asserted relative to any other Allowed Secured Claim in the same property of the estate.

1.4. "Bankruptcy Code" shall mean the Bankruptcy Reform Act of 2005, as amended from time to time, and codified at 11 U.S.C. §§ 101 et seq.

1.5. "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Maryland, Greenbelt Division, or any other court having jurisdiction over the Debtor's Chapter 11 Case or any proceeding arising under or arising in or related to the Debtor's Chapter 11 Case.

1.6. "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure currently in effect, as amended.

2

1.7.    "Bar Date" shall mean the deadline established by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3) as the date by which Claims which must be filed shall be filed, failing which such Claims may be disallowed for purposes of voting or distribution, or such date established by 3003-1 of the Local Rules; namely, 90 days following the first date set for the Section 341 meeting of creditors, or such other later date as the Bankruptcy Court may set for cause shown, and as to amendments of any filed proof of Claim (including but not limited to establishing a Deficiency Claim), the bar date is the Confirmation Order.

1.8.    "Cash Distributions" shall mean the cash payable from Cash Flow to Classes of Claims other than Administrative Expense Claims entitled to payment under the terms of the Plan in the priority of the Classes of Claims that have been established in the Plan.

1.9.    "Cash Flow" shall mean all Revenues after payment of Administrative Expense Claims and ordinary current term expenses of the Debtors.

1 .10.    "Chapter 11 Case" shall mean the Chapter 11 case of the Debtor's Case No. 14-19725 pending in the Bankruptcy Court.

1.11.    "Claim" shall mean:

(a)    a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

(b)    a right to an equitable remedy for breach of a performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.12.    "Claims Distribution Fund" shall mean the Debtor in Possession account for Cash Distributions maintained by the Debtor and funded by all Cash Flow of the Debtor existing or realized after the Petition Date.

1.13.    "Class" shall mean a Claim or Interest or a group of Claims or Interests consisting of those Claims or Interests which are substantially similar to each other, as classified under the Plan, or a Claim or Interest or a group of Claims classified by amount as may be reasonable and necessary, or a group of Claims or Interests which are otherwise required to be separately classified.

1.14.    "Confirmation Date" shall mean when the Confirmation Order becomes a Final Order.

1. 15.    "Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan under § 1129 of the Bankruptcy Code.

1.16.    "Creditor" shall mean any entity which holds a Claim against the Debtor.

1.17.    "Debt" shall mean a liability on a Claim.

1.18.    "Debtor" shall mean Gerald Yeboah Omari.

1.19.    "Disallowed Amount" shall mean, with respect to any particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Disputed Claim and the Allowed Amount thereof.

1.20.    "Disallowed Claim" shall mean a Claim that has been objected to pursuant to 11 U.S.C. § 502, or which is untimely amended, and which has not been ruled upon to be an Allowed Claim thereafter, or a Claim that is otherwise declared not an Allowed Claim by the Bankruptcy Court based upon a contested matter or adversary proceeding.

1.21.    "Disputed Claim" shall mean any Claim for which an Allowed Amount is disputed and/or where the allowed status is otherwise disputed, such as the difference between a secured Claim versus an unsecured Claim, or an untimely amendment of a filed Claim..

1.22.    "Effective Date" shall mean no later than thirty  (30) days following the

4

Confirmation Date, or the next business day thereafter if such date would be a holiday or
weekend.

      1.23.   "<u>Equity Interests</u>" shall mean the individual Debtor. Given that this is an
individual Chapter 11 case rather than an incorporated business association case, the Equity
Interests shall mean those Equity Interest holder interests in themselves which shall not be
cancelled upon the Confirmation Date as an individual cannot cancel or nullify an Equity Interest
in him or herself.  However, to the extent required by Title 11, the Debtor shall make a new
value investment to the extent necessary or appropriate to reacquire non-exempt property of the
estate.

      1.24.   "<u>Face Amount</u>" shall mean, with respect to a particular Claim:

     (a)     if the holder of such Claim has not filed a proof of Claim with the
Bankruptcy Court by the Bar Date, the amount if any, for which such
Claim is listed in the Schedules as fixed, undisputed, non-contingent and
liquidated as of the Petition Date; or

     (b)     if the holder of such Claim has filed a timely proof of claim with the
Bankruptcy Court by the Bar Date, the amount and character (ie; secured,
unsecured, priority) stated in such proof of Claim as of the Petition Date,
unless such Claim is a Disputed Claim; or

     (c)     with respect to an Administrative Expense Claim in the form of an
application for allowance of compensation or reimbursement of expenses
of Professional Persons filed and pending in the Bankruptcy Court, the net
amount to which such professional would be entitled if its application
were to be granted in full.

      1.25.   "<u>Final Order</u>" shall mean an order of a court from which the time for
appeal and reconsideration under Bankruptcy Rules 8002 and 9023 has expired without the
commencement of an appeal or request for reconsideration, or an order of a court as to which an
appeal or reconsideration has been taken, and where such order has been affirmed by appeal, or,
in the case of reconsideration, such request for reconsideration has been denied, and no appeal

from such denial of the request for reconsideration has been taken.

      1.26.   "Impaired" shall refer to any Class of Claims or Interests treated under the Plan in such a manner as described pursuant to § 1124 of the Bankruptcy Code.

      1.27.   "Insider(s)" shall mean the ownership interest(s) held by an Equity Interest Holder in himself or herself.

      1.28.   "Outstanding Debt" shall mean the Allowed Amount owed by the Debtor to any secured creditor.

      1.29.   "Petition Date" shall mean June 17, 2014, the date the Debtor voluntarily commenced his Chapter 11 case pursuant to the provisions of the Bankruptcy Code.

      1.30.   "Plan" shall mean this Plan of Reorganization, and any and all modifications or corrections hereof or amendments or supplements hereto.

      1.31.   "Priority Status" shall mean the priority in distribution which is afforded to certain Claims against the Debtor pursuant to § 507(a) of the Bankruptcy Code.

      1.32.   "Professional Persons" shall mean persons retained or to be compensated pursuant to §§ 327, 328, 330, 331 and 503(b) of the Bankruptcy Code.

      1.33.   "Pro-Rata" shall mean:

(a)    with respect to Allowed Claims, the same proportion that the Allowed Amount of a Claim of a Creditor in any Class of Claims bears to the aggregate of:

      (i)    the Allowed Amount of all Claims of that particular Class of Claims or other Classes of Claims if applicable; plus

      (ii)   the aggregate Face Amount of all Claims which are subject to dispute as of the Confirmation Date of that particular Class of Claims or other Classes of Claims if applicable, as reduced from time to time as and to the extent that the Disallowed Amount of such Claims is determined, and

(b)    with respect to Disputed Claims, the same proportion that the Face Amount of a Disputed Claim of a creditor in any Class of Claims bears to the aggregate of:

(i)      the Disputed Amount of all Claims of that particular Class of Claims or other Classes of Claims if applicable; plus

(ii)     the aggregate Face Amount of all Claims which are subject to dispute as of the Confirmation Date of that particular Class or other Classes of Claims if applicable, as reduced from time to time as and to the extent that the Disallowed Amount of such Claims is determined.

1.34.    "Revenues" shall mean all income received by the Debtor after the Petition Date.

1.35.    "Schedules and Statements" shall mean the schedules of assets and liabilities, and statement of financial affairs, as may be amended, filed by the Debtor with the Bankruptcy Court in the Chapter 11 Case and is intended to be reflective of the Debtor's testimony therein.  Such Schedules may be amended by the Debtor at any time.

1.36.    "Secured Creditor" shall mean the holder an Outstanding Debt and an Allowed Secured Claim.

1.37.    "U.S. Trustee" shall mean the Office of the United States Trustee in Greenbelt, Maryland.

1.38.    "Unsecured Claim" shall mean a Claim which is not an Administrative Expense Claim, an Allowed Secured Claim, an Allowed Deficiency Claim, an Administrative Convenience Claim, or a Claim otherwise entitled to Priority Status, if any.

## ARTICLE II
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

For purposes of the Plan, Claims and Interests are classified as follows:

2.1.    "Class 1 Claims" is reserved.

2.2.    "Class 2 Claim" shall consist of the Allowed Secured Claim of Nationstar Mortgage in the Face Amount of $223,893.79 [Cl. Dkt. 11], and based upon consent of

7

Nationstar by amendment upwards to the Claim of record, in 1609 E Street NE, Washington DC 20002.   *See* Adv. No. 15-00293, dismissed upon consent of Plaintiff and terms enrolled in this Plan.

2.3.    "Class 3 Claim" shall consist of the Allowed Secured Claim of Bank of America, N.A. in the Face Amount of $108,213.96 [Cl. Dkt. 7] [Adv. No. 14-00294; Dkt. 10 – Default Order] in 1609 E Street NE, Washington DC  20002.  .

2.4.    "Class 4 Claim" shall consist of the Allowed Secured Claim of Specialized Loan Servicing, LLC in the Face Amount of $3,617.21 (inclusive of the arrears of $1,484.00) [Cl. Dkt. 2] in 2018 West Saratoga Street, Baltimore, MD  21223.

2.5.    "Class 5 Claim" shall consist of the Allowed Secured Claim of Wells Fargo Home Mortgage in the Face Amount of $66,444.03 [Cl. Dkt. 5] in 2036 Druid Hill Avenue, Baltimore, MD 21217.   *See*, Adv. No. 15-00613; dismissed on consent of Debtor and terms enrolled in this Plan.

2.6.    "Class 6 Claim" shall consist of the Allowed Secured Claim of Wells Fargo Home Bank, NA  in the Face Amount of $32,055.00 [Cl. Dkt. 13] in 2036 Druid Hill Avenue, Baltimore, MD 21217.  *See*, Adv. No. 15-00614; dismissed on consent of Debtor and terms enrolled in this Plan.

2.7.    "Class 7 Claim" shall consist of the Allowed Secured Claim of Nation Star Mortgage, LLC in the Face Amount of $3,427.21 [Cl. Dkt.6] in 2528 W Baltimore Street, Baltimore, MD  21223.

2.8.    "Class 8 Claim" shall consist of the Allowed Secured Claim of Seterus, Inc. in the Face Amount of $3,642.16 [Cl. Dkt. 8] in 3303 Elmora Avenue, Baltimore, MD 21213.  The treatment of the Class 8 Claim was subject to Objection by Seterus, Inc. on October

28, 2015; however, the Objection was abandoned because the Class 8 Claim has been paid in full pursuant to prior adequate protection Orders entered earlier in the case. *See* Dkt. 48, 54 and 85. Accordingly, Class 8 shall receive no further Cash Distributions under the Plan as the Allowed Secured Claim is satisfied.

        2.9.   "Class 9 Claim"  shall consist of the Disputed Secured Claim of JP Morgan Chase Bank, NA in the Face Amount of $77,663.84 [Cl. Dkt. 14] (as adjusted for inclusion of post-petition taxes and insurance) in 3701 S. George Mason Drive, Falls Church, VA  22041 from which any Unsecured Claim shall be included within Class 18 as an Allowed Unsecured Claim.

        2.10.   "Class 10 Claim" shall consist of the Allowed Secured Claim of Wells Fargo Bank, NA in the Face Amount of $105,024.64  [Cl. Dkt. 15], per Adv. No. 15-00616 dismissed on consent of the Debtor and consent arrived at consistent therewith in 3701 S. George Mason Drive, Falls Church, VA  22041.

        2.11.   "Class 11 Claim" shall consist of the Allowed Secured Claim of Northwest Savings Bank in the Face Amount of $218,525.34 [Dkt. 19] in 617 N. Calhoun Street, Baltimore, MD  21217, which is allowed and to be treated exactly as is set forth in the 9019(a) motion filed in the companion bankruptcy case 617 N. Calhoun Street, LLC.

        2.12.   "Class 12 Claim" shall consist of the Allowed Secured Claim of Colombo Bank, FSB in the Face Amount of $236,179.22 [Dkt. 4] in 619 N. Calhoun Street, Baltimore, MD  21217, which is allowed and to be treated exactly as is set forth in the 9019(a) motion filed and approved at Dkt. 272, 286 herein.

        2.13.   "Class 13 Claim" shall consist of the Disputed Secured Claim of Bank of America, NA in the Face Amount of $278,555.22 [Cl. Dkt. 20] in 7416 Rhondda Drive, Lorton,

VA 22079. The fair market value of the above real property is $281,000.00 for the purpose of the Plan. *See* Adv. No. 15-00615, dismissed upon consent of Plaintiff and terms enrolled in this Plan.

2.14. "Class 14 Claim" shall consist of the Allowed Secured Claim of JP Morgan Chase Bank, NA in the Face Amount of $255,404.52 set forth in the Debtor's Schedules [Dkt. 21] in 7770 Grandwind Drive, Lorton, VA 22079.

2.15. "Class 15 Claim" shall consist of the Allowed Secured Claim of Wells Fargo Bank, NA in the Face Amount of $14,327.07 [Cl. Dkt. 10] in 7770 Grandwind Drive, Lorton, VA 22079.

2.16. "Class 16 Claim" shall consist of the Disputed Secured Claim of Wells Fargo Bank, NA in the Face Amount of $194,508.22 [Cl. Dkt. 9] in 7770 Grandwind Drive, Lorton, VA 22079. *See* Adv. No. 15-00619, dismissed upon consent of Plaintiff and terms enrolled in this Plan.

2.17. "Class 17 Claim" shall consist of the Allowed Secured Claim of Fairfax County in the Face Amount of $306.11 [Cl. Dkt. 22] in the Debtor's vehicles on Schedule B unidentified by Claim).

2.17.1 "Class 17.1 Claim" shall consist of the Allowed Secured Claim of Counsel of Co-Owners of Skyline Plaza Condominium Project, Inc. in the Face Amount of $1,116.00 [Cl. Dkt. 12] in 3701 S. George Mason Drive, Falls Church, VA 22041.

2.18. "Class 18 Claims" shall consist of the Allowed Unsecured Claims set forth at Schedule F of $88,319.17, any Deficiency Claims set forth above, and any particularized Unsecured Claims filed such as Discover Bank in the Face Amount of $10,614.11 [Cl. Dkt. 1]; Portfolio Recovery Services in the Face Amount of $2,187.57 [Cl. Dkt. 3]; Council of Co-

10

Owners of Skyline Plaza Condominium Project, Inc. in the Face Amount of $1,277.00 [Cl. Dkt. 12]; BGE in the Face Amounts of $817.21 [Cl. Dkt. 16]; $1714.55 [Cl. Dkt. 17]; $1,632.20 [Cl. Dkt. 18]; and DC Water Authority in the Face Amount of $1,865.11 [Cl. Dkt. 23]

      2.19.    "Class 19 Interests" shall consist of the Equity Interests of the Debtor in herself and non-exempt property of the estate.

      2.20.    The Debtor has not designated any Class of Claims under §§ 507(a)(2), 507(a)(3) or 507(a)(8) pursuant to § 1123(a)(1) of the Bankruptcy Code. The Plan contemplates that all Allowed Administrative Expense Claims shall be accorded treatment and payment as provided for by the Bankruptcy Code and as otherwise addressed by this Plan, or by prior court Order.   There exist several categories of Priority Claims and Administrative Expenses anticipated in the Plan pursuant to 11 U.S.C. §§ 503(b)(1) and 507(a)(2).  The Debtor's counsel anticipates attorney's fees and costs as of the Confirmation Date will be paid following application for same. Currently, the Debtor's counsel has incurred $104,333.00 in anticipated fees over the period this case has been pending, and has received  $65,727.98 from the Debtor in escrow through October, 2016.  It is anticipated that a substantial write down will occur to escrow then pending at confirmation absent further significant litigation.    Fee applications will be filed 90 days from the Effective Date.  Thus, any such Allowed Priority Claims shall be treated as required by 11 U.S.C. §§ 1129(a)(9)(C), 511  and this Plan.  The Office of the United States Trustee will be paid all outstanding quarterly fees on or before the Effective Date, if any be due.  The Debtor shall maintain timely payments on all quarterly fees due to the United States Trustee which accrue after the Effective Date as and when required.

## ARTICLE III
## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

3.1.    <u>Class 1 Claims are Impaired</u> .   Reserved.

3.2.    <u>Class 2 Claim is Impaired (Nationstar Mortgage)</u>.  Class 2 shall receive deferred Cash Distributions over the plan term necessary to cure the arrears on the Allowed Secured Claim and the Debtor shall otherwise maintain post-petition payments as and when due. Treatment of the Class 2 Claim as provided in this Plan shall entitle the Class 2 Claim to receive on account of its Allowed Secured Claim deferred Cash Distributions equivalent to the present value amount of its Allowed Secured Claim, of a value, as of the Confirmation Date, of at least the value of Class 2 Claimholder's interest in the Debtors' collateral, and for the realization by the Class 2 Claimholder of the indubitable equivalent of its Allowed Secured Claim.  Upon payment in full of the Class 2 Claim in accordance herewith, the lien of the Class 2 Claimholder against the collateral, or any other property of the Debtor shall be released.   Upon completion of Plan payments, the Class 2 Claim shall be discharged pursuant to 11 U.S.C. § 1141(d).  Liens are not subject to discharge.

Distributions to the Class 2 Claim are anticipated to be based upon $223,893.79 less payments made to Confirmation Date amortized at 2.75% over 30 year assumption and term at $914.02 per month.  The loan shall be escrowed post-confirmation for taxes and insurance as provided for by the loan documents and relevant law with notices timely issued.

3.3.    <u>Class 3 Claim is Impaired (Bank of America)</u>.  Class 3 shall receive deferred Cash Distributions over the plan term as set forth in Adv. No. 15-00294; Dkt. 10 in the amount of at 360 months at 3.25% interest producing a monthly payment of $470.95, with credit for any payments made by Plaintiff prior to the effective date of the Plan. Treatment of the Class 3 Claim as provided in this Plan shall entitle the Class 3 Claim to receive on account of its Allowed Secured Claim deferred Cash Distributions equivalent to the present value amount of its

12

Allowed Secured Claim, of a value, as of the Confirmation Date, of at least the value of Class 3 Claimholder's interest in the Debtors' collateral, and for the realization by the Class 3 Claimholder of the indubitable equivalent of its Allowed Secured Claim. Upon payment in full of the Class 3 Claim in accordance herewith, the lien of the Class 3 Claimholder against the collateral, or any other property of the Debtor shall be released. Upon completion of Plan payments, the Class 3 Claim shall be discharged pursuant to 11 U.S.C. § 1141(d). Liens are not subject to discharge.

      3.4.   <u>Class 4 Claim is Impaired (Specialized)</u>. Class 4 shall receive deferred Cash Distributions over the plan term necessary to cure the arrears on the Allowed Secured Claim and the Debtor shall otherwise maintain post-petition payments as and when due. Treatment of the Class 4 Claim as provided in this Plan shall entitle the Class 4 Claim to receive on account of its Allowed Secured Claim deferred Cash Distributions equivalent to the present value amount of its Allowed Secured Claim, of a value, as of the Confirmation Date, of at least the value of Class 4 Claimholder's interest in the Debtors' collateral, and for the realization by the Class 4 Claimholder of the indubitable equivalent of its Allowed Secured Claim. Upon payment in full of the Class 4 Claim in accordance herewith, the lien of the Class 4 Claimholder against the collateral, or any other property of the Debtor shall be released. Upon completion of Plan payments, the Class 4 Claim shall be discharged pursuant to 11 U.S.C. § 1141(d). Liens are not subject to discharge.

      Distributions to the Class 4 Claim are anticipated to be based upon $3,617.21less payments made to Confirmation Date amortized at 5.25% over 1 year assumption and term at $310.00 per month

3.5.    <u>Class 5 Claim is Impaired (Wells Fargo Home Mortgage)</u>.  Class 5 shall receive deferred Cash Distributions over the plan term necessary to cure the arrears on the Allowed Secured Claim and the Debtor shall otherwise maintain post-petition payments as and when due. Treatment of the Class 5 Claim as provided in this Plan shall entitle the Class 5 Claim to receive on account of its Allowed Secured Claim deferred Cash Distributions equivalent to the present value amount of its Allowed Secured Claim, of a value, as of the Confirmation Date, of at least the value of Class 5 Claimholder's interest in the Debtors' collateral, and for the realization by the Class 5 Claimholder of the indubitable equivalent of its Allowed Secured Claim.  Upon payment in full of the Class 5 Claim in accordance herewith, the lien of the Class 5 Claimholder against the collateral, or any other property of the Debtor shall be released.   Upon completion of Plan payments, the Class 5 Claim shall be discharged pursuant to 11 U.S.C. § 1141(d).  Liens are not subject to discharge.

Distributions to the Class 5 Claim are $66,444.03, with payments of $317.00 per month commencing August, 2016 or the Effective Date if the parties consent to the later date, at 4.00% interest over 360 months.  The loan shall remain escrowed and the Debtor shall pay  an additional post-petition escrow sum of $11,127.49  (representing 100% of the taxes and insurance payments advanced by Wells Fargo) over 360 months at $30.88 per month in satisfaction of this component.

3.6.    <u>Class 6 Claim is Impaired (Wells Fargo)</u>.  Class 6 shall receive deferred Cash Distributions over the plan term necessary to cure the arrears on the Allowed Secured Claim and the Debtor shall otherwise maintain post-petition payments as and when due. Treatment of the Class 6 Claim as provided in this Plan shall entitle the Class 6 Claim to receive on account of its Allowed Secured Claim deferred Cash Distributions equivalent to the present

14

value amount of its Allowed Secured Claim, of a value, as of the Confirmation Date, of at least the value of Class 6 Claimholder's interest in the Debtors' collateral, and for the realization by the Class 6 Claimholder of the indubitable equivalent of its Allowed Secured Claim.  Upon payment in full of the Class 6 Claim in accordance herewith, the lien of the Class 6 Claimholder against the collateral, or any other property of the Debtor shall be released.   Upon completion of Plan payments, the Class 6 Claim shall be discharged pursuant to 11 U.S.C. § 1141(d).  Liens are not subject to discharge.

Distributions to the Class 6 Claim are $32,055.00, with payments of $153,00 per month commencing August, 2016 or the Effective Date if the parties consent to the later date, at 4.00% interest over 360 months.

3.7.  <u>Class 7 Claim is Impaired (Nation Star Mortgage)</u>.  Class 7 shall receive deferred Cash Distributions over the plan term necessary to cure the arrears on the Allowed Secured Claim and the Debtor shall otherwise maintain post-petition payments as and when due. Treatment of the Class 7 Claim as provided in this Plan shall entitle the Class 7 Claim to receive on account of its Allowed Secured Claim deferred Cash Distributions equivalent to the present value amount of its Allowed Secured Claim, of a value, as of the Confirmation Date, of at least the value of Class 7 Claimholder's interest in the Debtors' collateral, and for the realization by the Class 7 Claimholder of the indubitable equivalent of its Allowed Secured Claim.  Upon payment in full of the Class 7 Claim in accordance herewith, the lien of the Class 7 Claimholder against the collateral, or any other property of the Debtor shall be released.   Upon completion of Plan payments, the Class 7 Claim shall be discharged pursuant to 11 U.S.C. § 1141(d).  Liens are not subject to discharge.

Distributions to the Class 7 Claim are anticipated to be based upon $5,955.88 less payments made to Confirmation Date amortized at 4.75% over 1 year assumption and term at $509.11 per month.  The loan shall be escrowed post-confirmation for taxes and insurance as provided for by the loan documents and relevant law with notices timely issued.

    3.8.   <u>Class 8 Claim is Impaired (Seterus, Inc.)</u>.  Class 8 shall receive no further Cash Distributions over the plan term necessary to cure the arrears on the Allowed Secured Claim because the Debtor has already fully satisfied the Class 8 Claim under the Consent Order on the Motion for Relief From Stay. Dkt. 85.  The Objection at Dkt. 172 by Seterus was to be withdrawn, but it remains of record in error.  Treatment of the Class 8 Claim as provided in this Plan shall entitle the Class 8 Claim to receive on account of its Allowed Secured Claim deferred Cash Distributions equivalent to the present value amount of its Allowed Secured Claim, of a value, as of the Confirmation Date, of at least the value of Class 8 Claimholder's interest in the Debtors' collateral, and for the realization by the Class 7 Claimholder of the indubitable equivalent of its Allowed Secured Claim.  Upon payment in full of the Class 8 Claim in accordance herewith which has already occurred, the lien of the Class 8 Claimholder against the collateral, or any other property of the Debtor shall be released.   Upon completion of Plan payments, the Class 8 Claim shall be discharged pursuant to 11 U.S.C. § 1141(d).  Liens are not subject to discharge.

    3.9.   <u>Class 9 Claim is Impaired (JP Morgan/Chase)</u>.  Class 9 shall receive deferred Cash Distributions over the plan term necessary to cure the arrears on the Allowed Secured Claim and the Debtor shall otherwise maintain post-petition payments as and when due. Treatment of the Class 9 Claim as provided in this Plan shall entitle the Class 9 Claim to receive on account of its Allowed Secured Claim deferred Cash Distributions equivalent to the present

16

value amount of its Allowed Secured Claim, of a value, as of the Confirmation Date, of at least the value of Class 9 Claimholder's interest in the Debtors' collateral, and for the realization by the Class 9 Claimholder of the indubitable equivalent of its Allowed Secured Claim.  Upon payment in full of the Class 9 Claim in accordance herewith, the lien of the Class 9 Claimholder against the collateral, or any other property of the Debtor shall be released.   Upon completion of Plan payments, the Class 9 Claim shall be discharged pursuant to 11 U.S.C. § 1141(d).  Liens are not subject to discharge.

Distributions to the Class 9 Claim are anticipated to be based upon $77,663.84 (previously agreed Allowed Secured Claim and escrow deficiency)  less payments made to Confirmation Date amortized at 5.75% over 30 year assumption and term at $453.23 per month. Relief from Stay will be afforded to creditor upon entry of Confirmation Order.  The loan will remain escrowed post-confirmation for taxes and insurance.  All other terms of the promissory note/deed of trust apply, including default terms.  Article XV of the Plan shall not apply to Class 9.

3.10.   Class 10 Claim is Impaired (Wells Fargo).  Class 10 shall receive deferred Cash Distributions over the plan term necessary to cure the arrears on the Allowed Secured Claim and the Debtor shall otherwise maintain post-petition payments as and when due. Treatment of the Class 10 Claim as provided in this Plan shall entitle the Class 10 Claim to receive on account of its Allowed Secured Claim deferred Cash Distributions equivalent to the present value amount of its Allowed Secured Claim, of a value, as of the Confirmation Date, of at least the value of Class 10 Claimholder's interest in the Debtors' collateral, and for the realization by the Class 10 Claimholder of the indubitable equivalent of its Allowed Secured Claim.  Upon payment in full of the Class 10 Claim in accordance herewith, the lien of the Class

17

10 Claimholder against the collateral, or any other property of the Debtor shall be released.

Upon completion of Plan payments, the Class 10 Claim shall be discharged pursuant to 11

U.S.C. § 1141(d).  Liens are not subject to discharge.

Distributions to the Class 10 Claim are anticipated to be based upon $105,024.64

less payments made to Confirmation Date amortized at 4.0% over 30 year assumption and term

at $501.00  per month commencing August, 2016 or the Effective Date if the parties consent to

the later date, at 4.00% interest over 360 months.

3.11.   Class 11 Claim is Impaired (Northwest Bank)  Class 11 shall receive

deferred Cash Distributions over the plan term necessary to cure the arrears on the Allowed

Secured Claim and the Debtor shall otherwise maintain post-petition payments as and when due.

Treatment of the Class 11 Claim as provided in this Plan shall entitle the Class 11 Claim to

receive on account of its Allowed Secured Claim deferred Cash Distributions equivalent to the

present value amount of its Allowed Secured Claim, of a value, as of the Confirmation Date, of

at least the value of Class 11 Claimholder's interest in the Debtors' collateral, and for the

realization by the Class 11 Claimholder of the indubitable equivalent of its Allowed Secured

Claim.  Upon payment in full of the Class 11 Claim in accordance herewith, the lien of the Class

11 Claimholder against the collateral, or any other property of the Debtor shall be released.

Upon completion of Plan payments, the Class 11 Claim shall be discharged pursuant to 11

U.S.C. § 1141(d).  Liens are not subject to discharge.

Distributions to the Class 11 Claim are anticipated to be based upon the 9019(a)

Motion filed and approved in the companion Chapter11 case of In Re 617 N. Calhoun Street,

LLC

18

3.12.   <u>Class 12 Claim is Impaired (Colombo Bank)</u>.  Class 12 shall receive deferred Cash Distributions over the plan term necessary to cure the arrears on the Allowed Secured Claim and the Debtor shall otherwise maintain post-petition payments as and when due as follows.  Treatment of the Class 12 Claim as provided in this Plan shall entitle the Class 12 Claim to receive on account of its Allowed Secured Claim deferred Cash Distributions equivalent to the present value amount of its Allowed Secured Claim, of a value, as of the Confirmation Date, of at least the value of Class 12 Claimholder's interest in the Debtors' collateral, and for the realization by the Class 12 Claimholder of the indubitable equivalent of its Allowed Secured Claim.  Upon payment in full of the Class 12 Claim in accordance herewith, the lien of the Class 12 Claimholder against the collateral, or any other property of the Debtor shall be released.   Upon completion of Plan payments, the Class 12 Claim shall be discharged pursuant to 11 U.S.C. § 1141(d).  Liens are not subject to discharge.

Distributions to the Class 12 Claim are anticipated to be based upon payment of $75,000.00 which has already been tendered upon which the lien on 619 N. Calhoun Street, Baltimore MD shall have released by Colombo Bank, and  the Debtor shall pay a further $50,000.00 to Colombo Bank on the judgment lien secured by 1609 E. Street, NE, Washington DC at 5.00% over 60 months at a monthly payment of $944.00 per month, upon the completion of which the liens of Colombo Bank on any property of the Debtor or 619 N. Calhoun, LLC shall release.  This treatment has been approved by an Order Granting Rule 9019(a) Relief.  Dkts. 272, 286.  The enrollment of a lien on 1609 E. Street, NE, Washington DC in favor of Colombo Bank in the amount of $50,000.00 is self-effecting under this Plan as it is a reduction of the prior judgment lien against that property in favor of Colombo Bank.  The lien shall be released upon

proof of payment of $50,000.00 with interest to Colombo Bank by the Debtor and the release shall be the responsibility of Colombo Bank to provide and file.

3.13.   Class 13 Claim is Impaired (Bank of America).  Class 13 shall receive deferred Cash Distributions over the plan term necessary to cure the arrears on the Allowed Secured Claim and the Debtor shall otherwise maintain post-petition payments as and when due. Treatment of the Class 13 Claim as provided in this Plan shall entitle the Class 13 Claim to receive on account of its Allowed Secured Claim deferred Cash Distributions equivalent to the present value amount of its Allowed Secured Claim, of a value, as of the Confirmation Date, of at least the value of Class 13 Claimholder's interest in the Debtors' collateral, and for the realization by the Class 13 Claimholder of the indubitable equivalent of its Allowed Secured Claim.  Upon payment in full of the Class 13 Claim in accordance herewith, the lien of the Class 13 Claimholder against the collateral, or any other property of the Debtor shall be released. Upon completion of Plan payments, the Class 13 Claim shall be discharged pursuant to 11 U.S.C. § 1141(d).  Liens are not subject to discharge.

Distributions to the Class 13 Claim are anticipated to be based upon $278,555.22 less payments made to Confirmation Date amortized at 5.00% over 40 year assumption and term at $1,343.00 per month.

3.14   Class 14 Claim is Impaired (JP Morgan/Chase).  Class 14 shall receive deferred Cash Distributions over the plan term necessary to cure the arrears on the Allowed Secured Claim and the Debtor shall otherwise maintain post-petition payments as and when due. Treatment of the Class 14 Claim as provided in this Plan shall entitle the Class 14 Claim to receive on account of its Allowed Secured Claim deferred Cash Distributions equivalent to the present value amount of its Allowed Secured Claim, of a value, as of the Confirmation Date, of

20

at least the value of Class 14 Claimholder's interest in the Debtor's collateral, and for the realization by the Class 14 Claimholder of the indubitable equivalent of its Allowed Secured Claim.  Upon payment in full of the Class 14 Claim in accordance herewith, the lien of the Class 14 Claimholder against the collateral, or any other property of the Debtor shall be released.  Upon completion of Plan payments, the Class 14 Claim shall be discharged pursuant to 11 U.S.C. § 1141(d).  Liens are not subject to discharge.  Distributions to the Class 14 Claim are anticipated to be based upon $255,404.52 less payments made to Confirmation Date amortized at 5.375% over 30 year assumption and term at $1,430.19 per month.  The loan shall remain escrowed for prospective escrow payments on taxes and insurance from the Confirmation Order.

        3.15.   <u>Class 15 Claim is Impaired (Wells Fargo)</u>.  Class 15 shall receive deferred Cash Distributions over the plan term necessary to cure the arrears on the Allowed Secured Claim and the Debtor shall otherwise maintain post-petition payments as and when due. Treatment of the Class 15 Claim as provided in this Plan shall entitle the Class 15 Claim to receive on account of its Allowed Secured Claim deferred Cash Distributions equivalent to the present value amount of its Allowed Secured Claim, of a value, as of the Confirmation Date, of at least the value of Class 15 Claimholder's interest in the Debtors' collateral, and for the realization by the Class 15 Claimholder of the indubitable equivalent of its Allowed Secured Claim.  Upon payment in full of the Class 15 Claim in accordance herewith, the lien of the Class 15 Claimholder against the collateral, or any other property of the Debtor shall be released.  Upon completion of Plan payments, the Class 15 Claim shall be discharged pursuant to 11 U.S.C. § 1141(d).  Liens are not subject to discharge.

        Distributions to the Class 15 Claim are anticipated to be based upon $6,029.10 post-petition arrears payable at the rate of $334.00 per month plus $686.00 arrears all payable to

Wells Fargo in accordance with the terms of the Consent Order on the Motion for Relief From Stay [Dkt. 201], which Order is specifically incorporated to this Plan.

3.16.   Class 16 Claim is Impaired (Wells Fargo).  Class 16 shall receive deferred Cash Distributions over the plan term necessary to cure the arrears on the Allowed Secured Claim and the Debtor shall otherwise maintain post-petition payments as and when due. Treatment of the Class 16 Claim as provided in this Plan shall entitle the Class 16 Claim to receive on account of its Allowed Secured Claim deferred Cash Distributions equivalent to the present value amount of its Allowed Secured Claim, of a value, as of the Confirmation Date, of at least the value of Class 16 Claimholder's interest in the Debtors' collateral, and for the realization by the Class 16 Claimholder of the indubitable equivalent of its Allowed Secured Claim.  Upon payment in full of the Class 16 Claim in accordance herewith, the lien of the Class 16 Claimholder against the collateral, or any other property of the Debtor shall be released. Upon completion of Plan payments, the Class 16 Claim shall be discharged pursuant to 11 U.S.C. § 1141(d).  Liens are not subject to discharge.

Distributions to the Class 16 Claim are anticipated to be based upon $194,508.22 less payments made to Confirmation Date amortized at 4.0% over 30 year assumption and term at $929.00 per month.

3.17.   Class 17 Claim is Impaired (Fairfax County).  Class 17 shall receive deferred Cash Distributions over the plan term necessary to cure the arrears on the Allowed Secured Claim and the Debtor shall otherwise maintain post-petition payments as and when due. Treatment of the Class 17 Claim as provided in this Plan shall entitle the Class 17 Claim to receive on account of its Allowed Secured Claim deferred Cash Distributions equivalent to the present value amount of its Allowed Secured Claim, of a value, as of the Confirmation Date, of

at least the value of Class 17 Claimholder's interest in the Debtors' collateral, and for the realization by the Class 17 Claimholder of the indubitable equivalent of its Allowed Secured Claim.  Upon payment in full of the Class 17 Claim in accordance herewith, the lien of the Class 17 Claimholder against the collateral, or any other property of the Debtor shall be released. Upon completion of Plan payments, the Class 17 Claim shall be discharged pursuant to 11 U.S.C. § 1141(d).  Liens are not subject to discharge.

       Distributions to the Class 17 Claim are anticipated to be based upon $306.11 less payments made to Confirmation Date amortized at 6% statutory interest over 1 year assumption and term at $26.35 per month.  To the extent this Class involves an adversary proceeding for strip down or strip off relief, and such relief is denied, the treatment will adjust on the same amortization term, interest rate but with a new principal balance.

       3.17.1. <u>Class 17.1 Claim is Impaired</u>:  Class 17.1shall receive deferred Cash Distributions over the plan term necessary to cure the arrears on the Allowed Secured Claim and the Debtor shall otherwise maintain post-petition payments as and when due. Treatment of the Class 17.1 Claim as provided in this Plan shall entitle the Class 17.1 Claim to receive on account of its Allowed Secured Claim deferred Cash Distributions equivalent to the present value amount of its Allowed Secured Claim, of a value, as of the Confirmation Date, of at least the value of Class 17.1 Claimholder's interest in the Debtors' collateral, and for the realization by the Class 17.1 Claimholder of the indubitable equivalent of its Allowed Secured Claim.  Upon payment in full of the Class 17.1 Claim in accordance herewith, the lien of the Class 17.1 Claimholder against the collateral, or any other property of the Debtor shall be released.   Upon completion of Plan payments, the Class 17.1 Claim shall be discharged pursuant to 11 U.S.C. § 1141(d).  Liens are not subject to discharge.

23

Distributions to the Class 17.1 Claim are anticipated to be based upon $1,116.00 less payments made to Confirmation Date amortized at 6% statutory interest over 1 year assumption and term at $96.05 per month.

3.18.   Class 18 Unsecured Claims Are Impaired:  Class 18 shall be paid their Allowed Unsecured Claims at a *Pro Rata* share of Cash Distributions paid monthly after payments of Allowed Administrative Expense Claims, Allowed Secured Claims, and Allowed Priority Claims over the Plan term.  As set forth in the Pro Forma for Plan distributions [Dkt. 327-1], Allowed Unsecured Claims will receive $386.00 per month for 60 months commencing on the Effective Date.  The amount of Cash Distributions payable to Allowed Unsecured Claims is set forth in the pro formas annexed to the Plan as to percentage and amount of monthly distributions.  T**he Allowed Unsecured Claims shall receive a floor base of ten percent (10%) minimum on their Allowed Amounts, with a surplus if any that is realized from Reserves.** As reflected by the liquidation analysis, none of these properties on a fair liquidation valuation or FLV test in the cumulative presents equity for Allowed Unsecured Claims.  Any Deficiency Claims will swamp such individual limited equity and the negative net equity is at least $488,805.00.  Pursuant to the Further, any net operating income that is created and generated by the Debtor after expenses and Cash Distributions shall be paid to the Allowed Unsecured Claims as a further dividend over the 60 month Plan.  Net operating income for the purposes of this Plan provision shall mean any income that remains and is retained on a monthly basis from Cash Flow after all Cash Distributions have been made, and given that this is an individual case where the sole source of Revenues are individual earnings from wages, there is no amortization or depreciation deducted from cash receipts. Such net operating income shall be paid to Allowed Unsecured Claims annually on the anniversary of the Effective Date each year of the Plan term

24

to the extent such net operating income has not been dedicated in that preceding calendar year to necessary and unanticipated operating expenses of the Debtor.

Upon the completion of Plan payments, the Class 18 Claims shall be discharged pursuant to 11 U.S.C. § 1141(d).

3.19.    <u>The Interest Holder is Impaired</u>.   The Interest holder being the individual Debtor shall receive or retain no property of the estate on account of his pre-petition interest in same; but shall receive new interests in property based upon his new value contribution.

3.20.    <u>The Administrative Expense Claims</u>.  In full and complete satisfaction, discharge and release of the Administrative Expense Claims, The Debtor shall satisfy the Allowed Amount of all Administrative Expense Claims in full on the Effective Date or as otherwise agreed from Revenues. The Plan contemplates that all Allowed Administrative Expense Claims shall be accorded treatment and payment as provided for by the Bankruptcy Code and as otherwise addressed by this Plan, or by prior court Order.

3.21.    <u>The Priority Claims.</u>  In full and complete satisfaction, the Debtor contemplates satisfaction of the Priority Claims of the Internal Revenue Service and Comptroller of the Treasury set forth above to be paid within 60 months of the Petition Date, pursuant to 11 U.S.C. §§ 1129(a)(9)(C) and 511.

<u>**ARTICLE IV**</u>
<u>**MEANS OF EXECUTION OF PLAN**</u>

4.1.    This Plan is a reorganizing plan under § 1129(a) and (b) of the Bankruptcy Code and is materially premised upon Cash Distributions from the Claims Distribution Fund to Classes of Claims in accordance with the priorities and terms identified in Articles III and IV of the Plan to be derived from the work efforts of the Debtor in his employment as an accountant

and as a property manager over a 60 month Plan term.

4.2.    The Plan has three phases; namely, the Effective Date distributions which pertain to Allowed Administrative Expenses and Priority Claims of professional persons and the second phase is the payment of Priority Claims, if any, to taxing authorities over 60 months from the Petition Date; and the third phase represents the remaining term of the Plan from the Effective Date through 60 months for remaining Cash Distributions for Classes 2 - 18.

4.3.    Before the Debtor can consummate his Plan and reach a notice of Plan completion in 60 months from the Effective Date, he needs to fund the payments which will be required as of the Effective Date. The Debtor anticipates reductions from pre-Confirmation Date expenditures in determining sufficient disposable income to fund the Plan.

4.4.    Following the Effective Date, and the prior satisfaction of all Administrative Expenses and professional persons' Priority Claims, the Debtor will turn their attention to the Plan commitments and the 60 months of Cash Distributions required thereby from Cash Flow.  The Debtor anticipates payments to be made monthly and without exception to the Classes of Allowed Claims that are contemplated within the Plan.

4.5.    Except as otherwise specifically provided in this Plan upon the Notice of Plan Completion date, title to all remaining property of the Debtor's Chapter 11 estate, including, but not limited to, monies contained in the Claims Distribution Fund shall vest in the Debtor in accordance with §§ 1141(a), (b) and (c) of the Bankruptcy Code, free and clear of all liens, claims or other interests in such property. Upon completion of Plan payments, a discharge shall be entered in favor of the Debtor pursuant to §§ 524 and 1141 of the Bankruptcy Code.

4.6.    Unless otherwise ordered by the Bankruptcy Court, all Cash Distributions contemplated by the Plan shall only occur on or subsequent to the Effective Date. All Cash

Distributions under the Plan shall be paid in the manner generally set forth in Article III of the Plan.

      4.7.    Although not described as a Class of Claims, the quarterly fees due and owing to the Office of the United States Trustee shall be maintained on a current basis by the Debtor paid as and when due under this Plan, absent early case closure.

      4.8.    The Plan contemplates a new value contribution by the Debtor's family of $75,000.00 that is reflected by the payment to Colombo Bank in partial satisfaction of a claim asserted against the Debtor, as more fully described in the 9019 Motion for Settlement of Controversy which was previously approved by this Court. [Dkts. 272, 286]

## ARTICLE V
## CRAM DOWN

      5.1.    In order to confirm the Plan, among other things, the Debtor must establish that, in accordance with § 1129(a)(8) of the Bankruptcy Code, each Class of Claims or Interests either (i) has accepted the Plan or (ii) is not Impaired under the Plan. In the event that this requirement cannot be satisfied, however, and all other applicable requirements for confirmation under § 1129(a) of the Bankruptcy Code are met, the Debtor may, and hereby does, invoke the "cram down" entitlement under § 1129(b) of the Bankruptcy Code, such that, as long as the Plan does not discriminate unfairly, and is fair and equitable, with respect to any Class of Claims or Interests that is impaired under, and has not accepted, the Plan, the Plan may be confirmed by the Bankruptcy Court.

## ARTICLE VI
## MODIFICATION OF THE PLAN

      6.1.    The Debtor may modify this Plan at any time prior to the Effective Date as permitted by § 1127(a) of the Bankruptcy Code.  If so modified, after the Debtor files the

modification with the Bankruptcy Court, the Plan as modified becomes the Plan.

6.2.     The Debtor may modify this Plan at any time after the Effective Date and before substantial consummation of this Plan as permitted by §§ 1101(2) and 1127(b) of the Bankruptcy Code.  The Plan as so modified under this subsection becomes the Plan only if the Bankruptcy Court, after notice and a hearing, confirms such Plan as modified under § 1127 of the Bankruptcy Code.

6.3.     Before or after the Confirmation Date, or in the Confirmation Order, the Debtor or the Bankruptcy Court may remedy any defect or omission, or reconcile any inconsistencies in the Plan or amend the Plan, in such a manner as may be necessary to carry out the provisions, purposes and effect of the Plan.

## ARTICLE  VII
## DISCHARGE

7.1.     The Debtor shall receive a discharge on the entry of a Notice of Plan Completion of Plan payments under 11 U.S.C. §§ 1141(d).

## ARTICLE VIII
## DISPUTED CLAIMS

8.1.     Notwithstanding anything to the contrary in the Plan, all Cash Distributions necessary to satisfy the Allowed Claim of any particular Disputed Claim will be held by the Debtor to the extent of available Cash Distributions attributable to that particular Disputed Claim pending resolution of the Disputed Claim by the Court should such a Disputed Claim be filed prospective to the Confirmation Order.  Any present Disputed Claims do not require escrow as their treatment is contemplated and described in this Plan.  Should a Disputed Claim filed after the Confirmation Order become a Disallowed Claim or have a Disallowed Amount, the Cash Distributions that do not attach to any Allowed Amount or Allowed Claim of

28

that Disputed Claim shall be released for Cash Distributions to other Allowed Claims under the Plan.

8.2.    The acceptance of any vote of any Claim or Interest by the Debtor shall not constitute an acceptance of such Claim or Interest for any purpose other than voting, nor shall the Debtor be deemed estopped from objecting to any Claim or Interest on such grounds. The recognition of any Claim or Interest by the Debtor for any purpose(s) preceding the entry of the Confirmation Order during the Chapter 11 Case shall not constitute a waiver of the Debtor's duty to its estate to investigate all Claims and Interests for objection. The Debtor reserves the right to object to any Claim or Interest and to treat same as a Claim or Interest under the Plan.

## ARTICLE IX
## CONTRACTS AND UNEX.PIRED LEASES

9.1.    Any and all executory contracts and unexpired leases within the meaning of § 365(a) of the Bankruptcy Code which have not been assumed or rejected shall be deemed to have been rejected by the Debtors upon the Confirmation Date. The Debtor expressly assumes all real property leases applicable to properties which secure Class 2 – Class 16.  A rent roll is attached to the Disclosure Statement filed herewith.

## ARTICLE X
## RETENTION OF JURISDICTION

10.1.    Upon entry of a Confirmation Order, the Plan shall be administered by the Debtor throughout its term.  The Bankruptcy Court shall retain limited and continuing jurisdiction over the Debtor and its Chapter 11 proceedings through and including the date that all Claims have been satisfied in the manner required under this Plan to the extent permitted under the Bankruptcy Code, including but not limited to, 11 U.S.C. § 1142.

10.2.    Prior Orders that have been entered in the Bankruptcy Case shall survive

29

and be merged into the Confirmation Order unless excluded therein or under this Plan. The

confirmation of this Plan is intended to have *res judicata* and *collateral estoppel* effect upon all

Creditors and parties in interest, and the terms of this Plan shall be binding on the rights of all

parties absent modification of the Plan within the meaning of *United Student Aid Funds v.*

*Espinosa*. 130 S. Ct. 1367 (2010).

        10.3.   The Court may address any of the matters over which it has hereby

retained continuing jurisdiction, which include inter alia, to determine any and all controversies

and disputes arising under, or in conjunction with the Plan including, but not limited to, issuing

any orders appropriate under § 105 of the Bankruptcy Code; to effectuate payments under, and

performance of, the provisions of the Plan, to modify the terms of the Plan; and to determine

such other matters and acts for such other purposes as may be provided for in the Confirmation

Order, to issue supplemental injunctions under 11 U.S.C. §§ 105(a) and 524, and such matters

provided for under § 1142 of the Code.

**ARTICLE XI**
**PREFERENCES AND AVOIDABLE TRANSFERS**

        11.1.   Any action by the Debtor to recover property of the estate and avoid any

transfer pursuant to §§ 542, 543, 544, 547, 548 or 549 of the Bankruptcy Code shall be

commenced by the filing of a complaint pursuant to Bankruptcy Rule 7003 within the applicable

period of time presented by the statute of limitations within Title 11 or otherwise as set by the

Court.  The Debtor have determined after investigation that no cost-effective and viable actions

exist other than those described in this Plan concerning recovery actions for unauthorized

pension contributions post-petition.

**ARTICLE XII**
**EQUITY INTEREST HOLDERS AND MANAGEMENT**

30

12.1.    The Equity Interest shall vest anew upon the Confirmation Date based upon the new value contributions being made from exempt property being applied to pay Allowed Claims and survive confirmation as this is an individual Chapter 11 Case as to that property of the estate identified in Section 1115 of the Bankruptcy Code; however, no Insider shall receive money or property on account of his or her prepetition Equity Interest other than salary or ordinary compensation as received prior to the Confirmation Order.   Management is inapposite as this is an individual case.

## ARTICLE XIII
## SCOPE OF ENGAGEMENT OF PROFESSIONAL PERSONS

13.1.    Counsel for the Debtor in possession shall continue to represent the Debtors after the Confirmation Date on negotiated terms absent a Motion for Withdrawal. These services for professional persons after the Confirmation Date shall be in the ordinary course as the estate will cease following entry of the Confirmation Order other than for the purposes of administration of the then confirmed Plan.

## ARTICLE XIV
## CLAIMS AMENDMENT BAR DATE

14.1.    It being desirous under the Plan to proceed with a reorganization that is based upon the present Claims of record, or those which would be amended by a date certain, the Plan provides that a bar date shall exist against amendments of any filed proofs of Claim being 14 days from the Confirmation Order (absent consent of the Debtor) such that should a Claim require amendment or correction either for inclusion of a previously unstated/omitted Deficiency Claim, or other omission, such amended proof of Claim must be filed and be of record on the docket of this Court on or before the Confirmation Date.  Otherwise, such Claim as to any changes including Deficiency Claim shall be forfeit, and the holder of the Claim will be

31

restricted to the Claim previously filed and of record.

## ARTICLE XV
## MISCELLANEOUS

15.1.    If any Creditor holding an Allowed Claim fails to receive a Cash

Distribution as provided under the Plan, or if any Creditor wishes to dispute the Debtor's

compliance with the Plan, such Creditor shall serve upon the Debtor written notice thereof and

file a notice of default with the Bankruptcy Court, and the Debtor shall not be deemed to be in

default of the provisions of this Plan unless the Debtor fails to cure or fails to take any other

affirmative response within 20 days from its uncontested receipt of service, a hearing may be set

by the Bankruptcy Court in order to resolve the default if requested by a party in interest.

**December 22, 2016**

Respectfully Submitted,
----------/S/ John D. Burns----------
_____

John D. Burns, Esquire (#22777)
The Burns LawFirm, LLC
6303 Ivy Lane; Suite 102
Greenbelt, Maryland 20770
(301) 441-8970
jburns@burnsbankruptcyfirm.com
Counsel for the Debtor